Okay, we'll turn to 23-1109 Coomer v. Make Your Life Epic. Mr. Quinn. Yes, may I have a moment? Go ahead. Okay. You may please support. My name is Tom Quinn. I represent the defendants' appellants in this case. I bring you, I've organized my argument or my presentation here today under two headings. The first is, should we be here in addressing the jurisdictional issues that may be present? And then the second is, why are we here? And those would be my concerns or our client's concerns with the district court's rulings. First of all, let me put, from my perspective, when you put the issues in the case together, we are here probably somewhat on a case of first impression here in the Tenth Circuit, at least with respect to jurisdictional issues. I will address the collateral order doctrine here in just a moment, but before we get there, I wanted to even, when you read across the cases, they recognize and the defense recognizes that the collateral order doctrine certainly has limited application. But those applications, or at least one of those application factors applies here in this case, and that is when you look at both the Los Lobos case and then at the U.S. District, Colorado Park case of Moreau, that when there is constitutional-based immunities involved, the collateral order doctrine may well be triggered. That is one of the areas that should be protected. So let's talk about the collateral order doctrine. First of all, we understand there are three prongs to it, and the first prong being conclusive. Did the district court order conclusively determine the disputed questions? Second, did it resolve issues separate from the merits of the case? And then third, is the district court's order effectively unreviewable on appeal from the final judgment? Let me address number one and three first. Number one, the plaintiff has conceded in the district court level that the district court's ruling, and if the district court's ruling, the denial of AISLAP conclusively determined that issue. So I'm not going to raise it and discuss it here today unless the court has any questions. Number three, the plaintiff did not raise the issue whether the district court's ruling effectively unreviewable on appeal, so I deem that as denied unless the court has any questions here today. So that turns us to number three on the should we be here, or excuse me, prong number two, and that is did the district court's ruling resolve an important issue completely separate from the merits of the case? I say the answer to that question is yes, and I point to four cases. The first would be the NCDR v. Maas and Bagby case in the Fifth Circuit. The second is the Henry v. Lake Charles case in the Fifth Circuit. The third would be the Bassel v. Smith case in the Ninth Circuit, and the last one is the DC Comics v. Pacific Pictures in the Ninth Circuit. So did the district court not even consider the merits at all? The district court did address the merits. It had to. Of course it did. It did, and so how do you say that it resolved an issue completely separate from the merits of the action if it considered the merits in coming to a decision? I think there's two ways to approach that. The first is that when the court looks at the concept of the Colorado anti-slap statute, it looks at it as to whether or not the defendant has to defend against the case in question. It's not looking at necessarily how the plaintiff will succeed on the cases for appeal, and that's what Tom Horan's case is. That's true in every court case. I'm sorry. Wouldn't that be true whenever there's a motion for summary judgment? If the lateral order doctrine is satisfied in that circumstance, then anyone who's denied summary judgment could appeal. In qualified immunity, we allow it, but the issue of clearly established law is totally separate from whether you proved your case. But here, that's what the judge is deciding. Was the case proved? No, the purpose of the anti-slap statute. So let me just go back to the California anti-slap statute, because I think that's the genesis of the Colorado anti-slap statute. The decisions, both in state and federal court that are addressing the California, identify that what you're dealing with is something that is in the nature of immunity when you're dealing with this. So does the defendant have to stand? If immunity just means you can't be sued if you don't have a case, so we dismiss it on the pleadings or on the summary judgment, I don't see quite what that gives you. You have to distinguish this from the typical denial of a motion for summary judgment before I'm going to understand why there's something completely separate from the merits. The issue is on the quasi-immunity. First of all, I believe we end up with a blend of the Erie Doctrine in answering some of those questions. So when you come to the Erie Doctrine, is there a substantive state law that we are going to apply here? And if the answer to that question is yes, then do you apply it fully at this stage? And so if we were to bring this case in state court and you were to be denied your anti-slap motion, then you would have an immediate right of appeal. That sounds pretty procedural to me. Hang on. Just so you'll know what you have to deal with. I understand. I understand what you're saying. You'd have an immediate right of appeal. But when you get to the federal court, which you will end up with, is if you're a plaintiff and you file a constitutionally protected claim that has a constitutionally protected interest, such as freedom of speech, and you file it, and you come to federal court, and you know that you won't have the right of immediate appeal, you've delved into foreign shock. But you acknowledged. I thought in your briefs you didn't pursue the claim that this right to appeal, given state law, should be applied in this case in federal court under the Erie Doctrine.  I'm not tracking. I apologize. You seem to be arguing that under the Erie Doctrine you should not be deprived of the right to an immediate appeal that you have in state court. Yes. And I thought your briefs disowned that argument and said you're just relying on the Collateral Order Doctrine. That's the way I read your brief. Well, you are, Your Honor. But when you read the Collateral Order Doctrine cases, including the Los Lobos case, they do touch on the concept of Erie Doctrine to make sure that if you come to federal court, and if you have a case that brings a substantive legal question to the court, then you should be entitled to all of the benefits, at least from my perspective, of the substantive law. Well, what if the state just had a different rule about denials of summary judgment and said if summary judgment is denied in general, you have the right to appeal? The loser of the summary judgment motion gets to appeal. If the summary judgment is granted, then the loser can appeal. That's standard. But in this circumstance, the person bringing the motion has the motion denied and then can appeal. That would be totally contrary to federal procedure, and I can't imagine that we would allow that sort of appeal just under the Erie Doctrine. There are certain things. You can say, boy, we couldn't put this evidence on in state court or could put it on in state court, and now you guys under Dalbert aren't going to let me put on this expert. That hurts you a lot, but that's our procedure. I understand that, but the difference is then, and it's been noted in the cases which I referenced, is if you're dealing with an immunity-like status, an entitlement to an immunity, then you should have the right to follow the state law and have a chance to challenge that on an immediate appeal so you don't have to stand trial. And I think that's the distinction. When you talk about summary judgment, it's not Rule 56. It wouldn't be on every Rule 56. But it's an immunity-type status, immunity-type statute. Generally, immunity is totally separate from the merits. It's I can't be sued because I'm a government employee or I'm a judge, so you can't sue me. That's the one we keep in mind all the time. So those have nothing to do with the merits. The judge may have totally screwed up, but you can't sue the judge. So just the fact that you should win is not enough to distinguish this from the requirement in collateral order doctrine that the issue that you can appeal under the collateral order doctrine has to be totally separate or separate from the merits. And that's what I'm struggling to see here. We're on one of the issues that I think the difference is under judicial immunity, that creates a status, right? That's you as a judge or me as a lawyer in a case. We can't get sued. For who do we have either privilege or immunity for doing so? The difference here is you're looking at protecting a constitutionally provided, both state and federal, freedom of speech. And that's the difference. So in order to make that analysis, you have to look, you do intertwine with the merits. And I think some of the cases we've talked about or I've cited here today address the reality that at some point there's going to be at least some touching of the merits as you go through in conducting an analysis whether your constitutionally protected right, freedom of speech, is in fact in jeopardy in the case. Deal with Los Lobos because there the court, this court, over a dissent that was pretty good, said that there was jurisdiction to handle the issue there, whether the SLAPP statute can apply at all in federal court. And they distinguished cases in which you were addressing the ruling under a SLAPP statute and it cited a Second Circuit opinion, which was very similar to the case we've got here. Okay, and I think what Judge Simcovich wrote in that case, and I think we were even looking at footnote eight when he talked about, you know, look, we can handle cases here in federal district court under the use of the rules of civil procedure. I think he cited 11, 12, a couple of 12 and 56. I just don't think that should be distinguished as between what you're doing with a constitutionally protected freedom of speech right that's created under a state statute. You're protecting something. You can't protect a state law under the federal rules of civil procedure. First of all, no one, I don't mean to criticize, but I've been practicing a long time. I don't think I've ever filed a motion under Rule 11 because of someone's lawsuit against my client. So that's out. The concept of immunity is that you don't have to stand trial. You don't have to incur the expense. You don't have to be exposed to the risk. 56 takes you all the way to the, all the way to the end of the case. You've already standing trial. You've already had to stand for the case. So I don't think, that's where I see the Second Circuit decision to be different than what we're dealing with here. Well, let me ask this, and then I want to give my colleagues may have questions on merits if we do have jurisdiction. So this will be my last issue. What is the decision made by the district court in throwing out an alleged slap suit? Isn't it identical to granting summary judgment? Isn't really that what it's deciding, whether it should grant summary judgment? I don't think so, because the issue in summary judgment is the plaintiff or the party with the burden of proof. Have they satisfied their burden of proof and can they move forward to the conclusion of the case? Here, you're just determining whether or not the defendant, you're determining whether the defendant is entitled to immunity. That ruling doesn't hold. It isn't introduced on the case. It isn't appealable at a later date. It is a threshold decision made right now. That decision doesn't emerge at the end of the case, and you can appeal it to a higher tribunal at a later time. Go ahead and address merits. If you want to say more on jurisdiction, you can. Can I follow up on jurisdiction quickly, which is matching up Cohen prong number two and the slap statues second step. The district court is evaluating if there's reasonable likelihood of success, right? Yes. And that ties directly back to resolve the issue completely separate from the merits of the action. And now back to Los Lobos, because I have serious questions whether we have jurisdiction. And Los Lobos says that on that question, these determinations necessarily turn on the merits of the lawsuit. So if we follow Los Lobos, if we follow the wording of the slap statute and Cohen, and if we were to follow Ernst, the second circuit, there wouldn't be appellate jurisdiction, would there? I think it depends on how narrowly you read Los Lobos, because I don't believe, when I look at Los Lobos, I say that it is making a determination on the way the district court of New Mexico denied even looking at the question of whether anti-slap applied in the first place. I did not track all of the factors. I'm sorry about that. Anything else? Thank you, counsel. Well, I should say something, too. I don't think we need security. I was concerned when we had so many people. I'm sorry, I keep meaning to say that to you after every break, and I forget. But you've got more important things to do at this point. Good morning. May it please the court. My name is Zach Bowman, and I'm here for appellee Dr. Eric Coomer. First, I will address that the court does lack jurisdiction to hear this appeal because it does not satisfy the collateral order doctrine. It does not satisfy the decision below applied summary judgment standards under Rule 56 and directly address the merits of the case. And if this court disagrees and for any reason reaches the merits, there's more than enough evidence to show the likelihood of prevailing in trial. Now, opposing counsel was correct that this is somewhat of an issue of first impression, but I think the court's already identified a key line of cases and reasoning within those cases that really answers the question before us today. And it starts with Los Lobos, which relies on the Ernst versus Kerrigan opinion of the Second Circuit, which in turn relied on the Johnson opinion out of the U.S. Supreme Court. And then even more recently, this court's Barnett opinion, which cited the Abbas opinion from the D.C. Circuit, addressed some of these principles as well. So walking through that line of cases really mandates one resolve. There's no jurisdiction here under the collateral order doctrine. As the court stated, Los Lobos recognized the distinction between a decision on whether to apply an anti-SLAPP statute, which could satisfy the collateral order doctrine and did in that case, and a case like this one, where the court does apply the anti-SLAPP statute, looks at the merits of the case and whether there's a likelihood of success. And this court stated in Los Lobos, even though that wasn't the issue before the court that day, that that's the kind of case that would directly address the merits and not satisfy the collateral order doctrine. In Los Lobos, this court relied on Ernst versus Kerrigan out of the Second Circuit, which used that key language that it has to be completely separate from the merits. And I think Judge Phillips identified that very question. If we're looking at a likelihood of success. Completely, it's not as clear cut as it seems. I mean, qualified immunity frequently turns on something that's rather close to the merits. I'm not quite sure what completely separate means. And I think the courts may have struggled with that as well. The Ninth Circuit seemed to certainly struggle with it. But as Your Honor stated, if it was an issue of a judge being sued, or someone with sovereign immunity, or a fact that exists before that suit is even applied, those are the kind of facts that are proven up to show immunity. Here, we're going directly to the prima facie elements of each claim and whether there's enough merit under each element to proceed to trial. So you agree, though, that just in general, that an anti-SLAPP motion is available in federal court in Colorado? Your Honor, we didn't argue below one way or the other. So you've at least then waived your ability to contest that? I don't think we have. I mean, I don't think we need to get to there. Because I think, honestly, this is a Rule 56 determination. And so under the straight collateral order doctrine, there's no appellate jurisdiction. If the court wanted to go there, I think it could, because it is a subject matter jurisdiction issue. And this court in Barnett did cite the Abbas opinion of the D.C. Circuit, written by then-Judge Kavanaugh, which goes directly into that issue. So is it your opinion that the statute doesn't apply at all in Colorado federal court? I agree with this court's reasoning in Barnett, where it cited that Abbas decision and said that it was a reasonable take on this that Rule 12 and Rule 56 occupy the field of whether a plaintiff is entitled to trial. That was Judge Kavanaugh's decision in the Abbas opinion. I think that reasoning is pretty sound. The district courts in Colorado have applied it in federal court. But even this court, I think in the Barnett decision, recognized, does it even really matter? If we're applying Rule 56 or Rule 12 standards, don't we end up with a decision anyway, whether the statute applies or not? Well, I mean, let's assume it applies. And if we accept your position, then district court decisions on, you know, once they agree that the statute applies, district court decisions are unreviewable on the final judgment. I disagree that they'd be unreviewable. Well, one thing that dissent pointed out in Los Lobos, somewhat scathingly from Judge Baldick, was the idea that they could have sought a permissive appeal. And it really chastised the appellant's counsel there for not doing so. I think in that case, they'd already had a permissive appeal approved by the district court, but didn't go the extra step of getting it from the court of appeals. So that is an available avenue if a party wants to seek an early appellate review of this kind of decision. Agreed, but I mean, how does that impact the availability of any review after trial? I mean, that's a different question, right? That's a different procedure for propping up an appeal. Right, and we're really focused, at least in our argument, on that second prong of the Cohen test, that this is not completely separate from the merits. And I think that's the key factor that they failed to meet here. Is there a Colorado law on whether the decision in the SLAP motion is treated essentially the same as a summary judgment motion? There is, Your Honor. Is there a difference in the standard? There is from the Colorado courts of appeals that have looked at this and said it is a summary judgment-like determination. Is it different at all? Is the standard of when you grant relief different from what it is with the summary judgment motion? I believe the relief is still going to be dismissal. I'm not talking about the relief. I'm talking about the decision-making process by the district court. Is it still whether no reasonable person could find for the plaintiff? I think the courts have struggled with that but have found that it's closest to a summary judgment standard with the reasonable likelihood language that's from the statute. They've looked at that as a reasonable probability. Of course, Rule 56 sets up a little bit of a different analysis in terms of whether there's a material fact issue or whether it's defeated as a matter of law. And we have a well-developed body of case law in Rule 56 and 12, which I think is why there's a strong opinion that this shouldn't apply in district court at all. But if it does, I mean, as opposing counsel admitted, they're not even arguing for an appellate right under the state statute. In page 6 of their response to our motion to dismiss, they state they're not pursuing that at all. I'm sorry, go ahead. Let me just follow up. It seems to me that the standard for granting dismissal under the SLAP statute is less strict than the summary judgment standard. We might have a Seventh Amendment issue here about the right to a jury trial in federal court. I think one of the circuits used that as part of their reasoning in interpreting the SLAP procedure as identical to the summary judgment procedure. And I think the Colorado courts that have looked at it, including the federal district courts, have treated it like a summary judgment standard. I think that's the only way that it can reasonably be treated, unless it is a purely legal Rule 12 type of argument. But I think Rule 12 and Rule 56 really govern how federal courts can look at these things. I think that's the only way that federal courts can do it. But I think as Judge Kavanaugh identified, Rule 12 and 56 already answered that issue. And we don't need additional procedural rules. And that was the holding in Los Lobos, when it was purely a procedural statute, was even though it did grant collateral order doctrine review, it ultimately determined this is a procedural anti-SLAP. We're not going to apply it in federal court. So we're looking here more at that question. Hypothesize for me how we can have a SLAP motion in Colorado federal court that doesn't in some way look at the merits. I think if it was asserting an immunity ground or a privilege ground, there might be a different type of argument for either granting collateral order review or stating that it doesn't address the merits. But that's certainly not what we have here. I guess I'm wondering, I mean, the statute appears to me, I mean, it's a political speech statute. You agree with that? I agree. It's a First Amendment speech issue. Yeah. I mean, so you can make commentary and give opinion on political matters and different matters and not be subjected to suit over it. Unless there's merit to the claims. Understood. So you necessarily have to consider what happened, the facts, to determine whether a dismissal is proper. And so that's every case. So there could never be an appeal in federal court. I think because it is a two-step process of does the statute apply, yes, we look at the speech, but the speech isn't ultimately as much tethered to the merits of whether a claim is going to succeed. It's only whether a speech gets you in the door of the anti-SLAP protection. But then if we move to that second step, then we're purely looking at what are the merits of these claims. Have they satisfied their evidentiary burden and put some evidence forth on each claim, each element, to justify going to trial. And then we're totally within the merits. And I think as this court identified, this would essentially be justifying collateral order doctrine review for every summary judgment option. It just seems to me that your position basically takes away the remedy of the statute. But again, Your Honor, they're not arguing for appeal under the statute. We're purely in the realm of deciding collateral order doctrine review. It might be a different argument if they were, but that's not an argument that they're making. And the statute itself says you get an appeal to a Colorado Court of Appeals. I think that may be the language that justified not even arguing for appellate jurisdiction in front of this court. So they're purely arguing collateral order doctrine review here. And the Johnson case that I mentioned out of the U.S. Supreme Court that was cited in the Ernst case sets out a lot of the reasoning for why we have this doctrine. I think the court's well acquainted with the fact that we don't want appeals before there are less developed records. We don't want appeals that are going to raise an issue for the first time and then have another appeal after trial. In Johnson, the court stated that the requirement that the matter be separate from the merits of the action itself means that review now is less likely to force the appellate court to consider approximately the same or a very similar matter more than once. Well, that's exactly what we would have here. If this case proceeded to trial and came up on appeal again, this court would have to consider the merits of these factual issues just as it did at this anti-slap appeal. So the reasoning in Los Lobos and a lot of the cases I've gone through has been really a multi-pronged policy justification for adhering to the finality of judgment and strictly construing the collateral order doctrine. District courts are well acquainted with how to manage their dockets, how to get rid of frivolous claims. It was in Los Lobos that this court stated, anyone who believes that a federal district court is ill-equipped to deal swiftly and harshly with the sort of lawsuits described in an anti-slap statute, absent application of an anti-slap statute, and there was citing a New Mexico statute, is seriously mistaken. So here we have a senior district judge, Martinez, who's well acquainted with the federal rules, able to apply those to get rid of any frivolous claims or anything that can't proceed to trial under Rule 12 and Rule 56. So there's no justification for applying the collateral order doctrine here. This was a decision on the merits. The court, I think, can write its decision either specifically as to this case because the opinion here did rely on Rule 56 standards or more broadly as to the anti-slap statute. It seems like the merits have been less of a focus here today, but if the court does get to the merits, there's an overwhelming amount of evidence that justifies defeating the anti-slap motion. Just as background, again, anti-slap motions are intended to defeat frivolous or meritless claims and prevent abuse of the judicial process, but to still protect the rights of persons to file meritorious lawsuits for demonstrable injuries. That's exactly what we have here. A review of the record would show that there were defamatory statements that were made with actual malice, and those statements essentially operated around a core set of factual statements that Mr. Oldman, who was a repeated guest on the Thrive Time show with Mr. Clark, that he had infiltrated an Antifa conference call, that Dr. Coomer stated on that call that he rigged the election, and that he did, in fact, rig the election. And what's overwhelming in this case is this wasn't just a one-time representation. When this started in December of 2020, that show, that interview was titled, Exposing the Treasonous Eric Coomer, the Antifa Member and Director of Strategy and Security at Dominion Voting Systems. That was just the beginning. That statement alone would justify a lawsuit. But we had over a year of representations on the podcast. Mr. Clark would then go on Mr. Oldman's podcast. Then they go on tour during the reawakening tour, and I'm running out of time to address everything. So is your position on the statements that were made by Oldman that the defendant affirmed those, and that's where the liability comes in? That's part of it, Your Honor, and that comes out of this court's decision in Dixon v. Newsweek that a party can be liable for republishing false defamatory statements. They didn't republish it, did they? They just gave him a forum for saying it. They gave him a forum. They tweeted a summary of the interview. They attached show notes. They repeatedly praised him for exposing the truth and bringing facts to light. Okay, so that's sort of the affirming it, right? Right, but also Mr. Clark repeatedly would state that Mr. Oldman had discovered facts that had divulged some sort of election fraud. So he was repeating these statements himself as well, praising Mr. Oldman for verifying the truth. And just because that went on for a year, we had so many instances where we don't need to get into it. Anyway, if the court gets to it, it can certainly address the merits, but as we've stated, we don't believe there's jurisdiction here in the first place. And a ruling on jurisdiction is not an endorsement of your claim. You realize that? I do, Your Honor. Thank you very much for your time. I'm not going to give you time to respond on the merits. There's no way to do it in a minute or two anyway, really, as he learned. Thank you, counsel. Case is submitted. Counsel excused. We'll take a ten-minute break.